# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

CHERYL A. BAKER,

     *Plaintiff*,

*v.*                                    CASE NO. 10-CV-13748

COMMISSIONER OF                  DISTRICT JUDGE PAUL D. BORMAN
SOCIAL SECURITY,                 MAGISTRATE JUDGE CHARLES E. BINDER

     *Defendant*.

_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION[1]

## I.   RECOMMENDATION

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **DENIED**, that Defendant's Motion for Summary Judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

## II.   REPORT

### A.   Introduction and Procedural History

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to this magistrate judge for the purpose of reviewing the Commissioner's decision denying Plaintiff's claims for a period of disability and Disability

---

[1]The format and style of this Report and Recommendation are intended to comply with the requirements of the E-Government Act of 2002, Pub. L. 107-347, 116 Stat. 2899 (Dec. 17, 2002), the recently amended provisions of Fed. R. Civ. P. 5.2(c)(2)(B), E.D. Mich. Administrative Order 07-AO-030, and guidance promulgated by the Administrative Office of the United States Courts found at:  http://jnet.ao.dcn/img/assets/5710/dir7-108.pdf.  This Report and Recommendation only addresses the matters at issue in this case and is not intended for publication in an official reporter or to serve as precedent.

Insurance Benefits ("DIB"), and for Supplemental Security Income ("SSI") benefits. This matter is currently before the Court on cross-motions for summary judgment. (Docs. 29, 31.)

Plaintiff was 45 years of age at the time of the most recent administrative hearing. (Transcript, Doc. 25 at 32, 125, 128.) Plaintiff's employment history includes work as a laborer for a landscaping business for five years, a housekeeper/cleaner for two years, and a restaurant cook for one year. (Tr. at 151.) Plaintiff filed the instant claims on February 25, 2008, alleging that she became unable to work on February 1, 2008. (Tr. at 125, 128.) The claims were denied at the initial administrative stages. (Tr. at 79-80, 81.) In denying Plaintiff's claims, the Commissioner considered disorders of back, discogenic and degenerative, and muscle/ligament disorder and fascia as possible bases for disability. (*Id.*) On September 9, 2009, Plaintiff appeared before Administrative Law Judge ("ALJ") Paul R. Armstrong, who considered the application for benefits *de novo*. (Tr. at 10-24, 32.) In a decision dated November 18, 2009, the ALJ found that Plaintiff was not disabled. (Tr. at 24.) Plaintiff requested a review of this decision on December 2, 2009. (Tr. at 6-7.)

The ALJ's decision became the final decision of the Commissioner, *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004), on June 24, 2010, when, after the review of additional exhibits[2] (Tr. at 4, 186-88), the Appeals Council denied Plaintiff's request for review. (Tr. at 1-5.) On September 20, 2010, Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision.

---

[2]In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review. *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996); *Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993). Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ. In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

**B.      Standard of Review**

In enacting the social security system, Congress created a two-tiered structure in which the administrative agency handles claims and the judiciary merely reviews the determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 890, 107 L. Ed. 2d 967 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137, 142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). If relief is not found during the administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986) (en banc).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). *See also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). *See also Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

"It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). *See also Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the

3

ALJ is charged with observing the claimant's demeanor and credibility'") (citing *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence")); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247 (quoting S.S.R. 96-7p, 1996 WL 374186, at *4).

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, a court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). *See also Mullen*, 800 F.2d at 545. The scope of a court's review is limited to an examination of the record only. *Bass,* 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers,* 486 F.3d at 241. *See also Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (citing *Mullen*, 800 F.2d at 545).

When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir.

1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. App'x 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party"); *Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. App'x 521, 526 (6th Cir. 2006).

### C.      Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994). *Accord Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. App'x 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the DIB program of Title II, 42 U.S.C. §§ 401 *et seq.*, and the SSI program of Title XVI, 42 U.S.C. §§ 1381 *et seq*. Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. Bloch, Federal Disability Law and Practice § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

5

Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.

Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.

Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five:  Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920. *See also Heston,* 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin,* 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by [his] impairments and the fact that [he] is precluded from performing [his] past relevant work[.]" *Jones*, 336 F.3d at 474 (cited with approval in *Cruse,* 502 F.3d at 540). If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC [residual functional capacity] and considering relevant vocational factors." *Rogers,* 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

D.     **ALJ Findings**

The ALJ applied the Commissioner's five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff had not engaged in substantial gainful activity since February 14, 2008, the application date. (Tr. at 15.) At step two, the ALJ found that Plaintiff's degenerative disc disease of the cervical and lumbar spine were "severe" within the meaning of the second sequential step. (Tr. at 15-17.) At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations. (Tr. at 17.) At step four, the ALJ found that Plaintiff could perform her past relevant work as a housekeeper/cleaner. (Tr. at 22-23.) Alternatively, at step five, the ALJ found that Plaintiff retains the residual functional capacity to perform a limited range of light work. (Tr. at 17-22.) Therefore, the ALJ found that Plaintiff was not disabled. (Tr. at 24.)

### E.    Administrative Record

A review of the relevant medical evidence contained in the administrative record indicates that Plaintiff has been treated for back and neck pain since 2007. An MRI of the cervical spine taken on May 29, 2007, showed "loss of the normal cervical lordosis." (Tr. at 301.)

Plaintiff was treated by Ashraf Khan, D.O., from October 2007 through July 2009. (Tr. at 303-82.) Although Plaintiff underwent some cervical epidural steroid and facet joint injections, she had "minimal relief." (Tr. at 324.) On April 7, 2008, Plaintiff "complain[ed] of depression and anxiety." (Tr. at 349.) On September 23, 2008, Plaintiff reported that "her condition is same" and that "[a]t least with medicine, pain is stable, tolerable." (Tr. at 319.) On July 31, 2009, Dr. Khan noted that, overall, Plaintiff "states she has better quality of life with medicine" and "[s]he is more functional." (Tr. at 304-05.) Upon examination, Dr. Kahn found that Plaintiff's gait was normal, range of motion for the cervical and lumbar spine was normal, upper extremity strength was 5/5

bilaterally, 5/5 bilaterally for the lower extremities, and that her straight leg raising was positive bilaterally at 60 degrees. (Tr. at 305-06.)

Notes from the Pontiac Osteopathic Hospital ("POH Medical Center") indicate that between May 2007 and January 7, 2009, Plaintiff had no musculoskeletal or neurological weakness (Tr. at 270-75, 280, 282, 288, 290, 292, 294, 302) and that, while "chronic neck and back pain" were noted in January 2009 and August 2007, only "neck pain" was noted in May 2008, and no musculoskeletal pain was noted in January or July 2008. (Tr. at 270, 273, 274, 280.) In July 2007, the musculoskeletal pain was described as "managed." (Tr. at 295.) Muscle strength was noted as 4/5 and 5/5 in May 2008. (Tr. at 274.) Anxiety was also noted for he first time on January 7, 2009. (Tr. at 271.)

On March 20, 2008, Bill Underwood, M.D, Ph.D., neurological consultants, examined Plaintiff and requested that an MRI of the lumbar spine be taken before diagnosis. (Tr. at 210.) On April 1, 2008, Dr. Underwood examined the results of MRIs of the cervical and lumbar spines and concluded:

> The MRI [of the cervical spine] was done on 3/24/08. This shows cervical spondylosis C3 through C7. Also at C3-4, C4-5 and C5-6 there is posterior central disc spur osteophyte complex with mild effacement of the thecal sac with narrowing of the left foramen at C3-4, the right at C4-5 and the left at C5-6. Also at C6-7 there is a right central disc herniation with moderate ventral impression on the thecal sac causing bilateral foraminal narrowing. Patient had an MRI of lumbar spine. This shows mild L2-3, L3-4 and L4-5 stenosis with disc bulges and facet arthropathy.

(Tr. at 212.) Dr. Underwood noted that "[i]n talking to [Plaintiff], her symptoms have not changed that dramatically over the years. I would like to start her out with physical therapy for both her cervical and lumbar spine." (*Id.*) Plaintiff continued to be treated by Dr. Underwood, and as of August 25, 2009, Dr. Underwood noted that Plaintiff's MRIs of the cervical and lumbar spine

showed "no significant new changes when compared to the old MRIs." (Tr. at 386, 386-417.) Dr. Underwood recommended physical therapy. (*Id.*)

On February 13, 2008, Plaintiff reported to her doctor that she "had pain for about 20 years." (Tr. at 204.) On March 20, 2008, Rosa Maria Berry, N.P., examined Plaintiff for neck and back pain and found Plaintiff's neck to be supple, her neck extension to be normal, her shoulder elevation to be 5/5 bilaterally, her gait to be steady, her motor and muscle strength in her upper extremities, including wrist extension, hand grip, and hand intrinsics to be 5/5 bilaterally and 5/5 bilaterally in her lower extremities, including iliopsoas, hamstrings, quadriceps, dorsiflexion and plantar flexion. (Tr. at 202, 208.)

Plaintiff was also treated by Thomas C. Kelly, M.D., on March 27, 2008. (Tr. at 199-200.)

A Physical Residual Functional Capacity ("RFC") Assessment completed on May 23, 2008, concluded that Plaintiff could occasionally lift 20 pounds, frequently lift 10 pounds, stand or walk for about 6 hours in an 8-hour workday, sit for about 6 hours in an 8-hour workday and was unlimited in her ability to push or pull. (Tr. at 219.) The assessment also concluded that Plaintiff was occasionally limited in all postural areas except was frequently limited in balancing. (Tr. at 220.) Plaintiff was found to be unlimited in the manipulative area except for handling by the left hand. (Tr. at 221.) There were no visual, communicative or environmental limitations established. (Tr. at 221-22.) The assessment also found that Plaintiff was "not fully credible" because "[m]edical information show no LE pain," and her gait and shoulder were "normal." (Tr. at 223.)

A Psychiatric Review Technique completed on May 28, 2008, by Ashok Kaul, M.D., diagnosed Plaintiff with anxiety-related disorders, i.e., anxiety (Tr. at 226, 231), but also found that Plaintiff had no functional limitations as a result of that disorder. (Tr. at 236.)

Plaintiff also participated in physical therapy from April through September of 2008. (Tr. at 331-48.) Upon discharge, a home exercise program was recommended. (Tr. at 332.)

On August 17, 2009, Reed Epstein, D.O., completed a "Medical Assessment of Physical Capacity to Work" and concluded that Plaintiff could only lift 0-10 pounds, sit for 1 hour, stand for 2 hours and walk for 1 hour in an 8-hour day, and that she could not perform these functions without having to take an unreasonable number and length of rest periods. (Tr. at 259.) Dr. Epstein opined that Plaintiff could never perform climbing, pushing/pulling or reaching, and could occasionally perform balancing, stooping, crouching, kneeling, bending, crawling, handling, and feeling. (Tr. at 259.) Dr. Epstein also concluded that Plaintiff was unable to work in her past occupation or any full time occupation. (*Id.*) Dr. Epstein indicated that Plaintiff should elevate her legs 3 times daily for 15 minutes each time "due to lumbar radiculopathy, sacroiliac joint syndrome, cervical radiculopathy, [and] cervical myofascial pain syndrome." (Tr. at 260.)

A Medical Source Statement of Ability to Do Work-Related Activities (Physical), completed after examination on October 1, 2009, by Todd T. Best, M.D., indicated that Plaintiff could lift and carry up to 10 pounds frequently, and occasionally lift 11 to 20 pounds. (Tr. at 418.) The statement also indicated that Plaintiff could sit for 6, stand for 2 and walk for 1 hour in an 8-hour day. (Tr. at 419.) Plaintiff was found to be able to use her hands and feet frequently, but only use her hands occasionally for reaching. (Tr. at 420.) It was determined that Plaintiff was able to occasionally perform climbing stairs and stooping, but could never perform any other postural activities. (Tr. at 421.) Plaintiff was assessed as being able to withstand occasional environmental issues, but that she should never be exposed to extreme cold or heat. (Tr. at 422.) It was also concluded that Plaintiff could perform all the activities listed. (Tr. at 423.)

In her daily activity report, Plaintiff indicated that she helps her nine year-old son get ready for school, cooks, picks up around the house a little, and takes her medications. (Tr. at 166.) She also indicated that she takes care of her dog, that her boyfriend helps with cleaning, cooking, and laundry, that she has no problem with personal care, does not need any reminders to take her medicine, and that she can prepare meals involving "several courses" on a "daily" basis, but that her boyfriend helps her lift heavy pans off the stove. (Tr. at 167-68.) Plaintiff further indicated that she tries to "get out every day to get fresh air[,]" is able to manage her finances, watches television, is able to ride in and drive a car, is able to socialize on the phone and in person, is able to attend her son's ball games, and is able to shop in stores once a week for about 35 to 40 minutes. (Tr. at 169-70.)

Plaintiff testified at the administrative hearing that her disability claim is not based on hearing loss but rather on her neck, lower back, and her hands going numb. (Tr. at 45-46.) Plaintiff stated that she does not ever get tingling in her legs or feet, nor does she ever get any pain that goes down her legs. (Tr. at 48-49.) She further testified that she can walk for about ten minutes before needing to stop and stretch. (Tr. at 49.) Plaintiff stated she does not drive because of the side effects from her medication, but then indicated she does drive to go grocery shopping if she cannot find a ride. (Tr. at 49-50.) Plaintiff testified that no surgeon had recommended surgery for her back. (Tr. at 52-53.) Plaintiff stated that she can cook if she sits, stands, and paces herself. (Tr. at 54.) Plaintiff testified that she does dishes and cooks simple meals, but that she does very little cleaning because her son and boyfriend do most of the cleaning and yard work. (Tr. at 68-69.)

When asked whether she could work for eight hours a day with normal breaks, Plaintiff responded, "no," but then asked "you mean if I can sit, stand, and walk around on the phone?" (Tr. at 57.) Instead of answering the question, her attorney asked if she owned a computer. (*Id.*) When

the ALJ inquired whether Plaintiff could perform a simple job where she could sit and stand as needed, where she would only have to lift a couple of pounds, and use her hands very occasionally, Plaintiff responded that she could perform that work "[f]or maybe a limited period of time." (Tr. at 64.) When further asked whether she could perform such a job full-time, Plaintiff responded, "I don't know about full time because of all the doctors' appointments." (*Id.*) When the ALJ explained that she was to think about whether she could do the job rather than doctor's appointments, she indicated, "possibly." (Tr. at 65.)

At the administrative hearing, the ALJ asked the vocational expert ("VE") whether he would testify in accordance with the Dictionary of Occupational Titles ("DOT") and whether he would indicate if there was any difference between his testimony and the information in the DOT, to which the VE responded he would. (Tr. at 73.) The VE also stated that the geographical area he would refer to would be the Southeastern Michigan regional and national labor market. (Tr. at 73.) The VE then classified Plaintiff's past jobs according to the DOT. (Tr. at 73-74.) The ALJ asked the VE to consider a person with Plaintiff's background who is "limited basically to light exertional abilities with frequent fine finger manipulation with the left nondominant hand, no work at unprotected heights, around dangerous machinery, open flames or bodies of water." (Tr. at 74.) When asked whether that hypothetical person be able to return to any of the past relevant work of the claimant, the VE responded that such a person could perform the past work as a housekeeper/cleaner. (*Id.*) When further asked whether it would make any difference if the individual could only do occasional fine finger manipulation, the VE responded that it would not make any difference. (*Id.*) If limited to sedentary work, the VE indicated such a person could not perform any of the past relevant work. (Tr. at 74-75.) However, the VE also indicated that such a person could perform the 3,250 hand packager jobs, the 1,500 inspector sorter jobs, and the 4,000

information clerk jobs in Southeastern Michigan. When the ALJ asked the VE to add a limitation to simple unskilled work due to the effects of heavy medication, the VE responded that such a limitation would have no effect on the jobs available. (Tr. at 75.) When asked whether such a person could still work if she were limited by medication to being off task for an average of 15 minutes every hour, the VE responded that such a person would not be able to perform any work. (Tr. at 75-76.) In addition, it was noted that if a person needed to miss more than three days a month, such a person would be precluded from competitive employment. (Tr. at 76.) Defense counsel indicated he had no questions for the VE. (*Id.*)

###   F.   Analysis and Conclusions

###   1.   Legal Standards

The ALJ concluded that Plaintiff was capable of returning to her prior work as a housekeeper/cleaner. The Commissioner's regulations state that the agency "will first compare our assessment of your residual functional capacity with the physical and mental demands of your past relevant work." 20 C.F.R. § 416.960(b); 20 C.F.R. §404.1560(b). "If you can still do this kind of work, we will find that you are not disabled." 20 C.F.R. § 404.1520(f); 20 C.F.R. § 404.1560(b)(3). "'By referring to the claimant's ability to perform a "kind" of work, [the regulations] concentrate[] on the claimant's capacity to perform a type of activity rather than [her] ability to return to a specific job or to find one exactly like it.'" *Boucher v. Apfel*, 2000 WL 1769520, at *7 (6th Cir. Nov. 15, 2000) (quoting *Pass v. Chater*, 65 F.3d 1200, 1204 (4th Cir. 1995)).

An "ALJ [is] not required to solicit testimony from a VE in reaching his conclusion" that a plaintiff is able to perform her past relevant work. *Wright-Hines v. Comm'r of Soc. Sec.*, 597 F.3d 392, 395 (6th Cir. 2010) (citing 20 C.F.R. § 404.1560(b)(2) ("We *may* use the service of vocational experts . . . to help us determine whether you can do your past relevant work[.]") (emphasis in

original); *Griffeth v. Comm'r of Soc. Sec.*, 217 Fed. App'x 425, 429 (6th Cir. 2007) ("The regulations permit an ALJ to use the services of a vocational expert at step four to determine whether a claimant can do his past relevant work . . . .")). Should the ALJ use the services of a VE, the ALJ need only incorporate those limitations into the hypothetical question that he finds credible and supported by the record. *Casey v. Sec'y of Health and Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993).

As noted earlier, the ALJ determined in the alternative that during the time Plaintiff qualified for benefits, she retained the residual functional capacity to perform a limited range of light work. (Tr. at 17-22.)

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking and standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

After review of the record, I suggest that the ALJ utilized the proper legal standard in his application of the Commissioner's five-step disability analysis to Plaintiff's claim. I turn next to the consideration of whether substantial evidence supports the ALJ's decision.

### 2.    Substantial Evidence

Plaintiff contends that the ALJ's decision is not supported by substantial evidence. As noted earlier, if the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if this Court would have decided the matter differently and even where substantial

evidence supports the opposite conclusion. *McClanahan,* 474 F.3d at 833; *Mullen,* 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

Specifically, Plaintiff contends that the ALJ's finding is not supported by substantial evidence (Doc. 29 at 15-18), that the ALJ improperly weighed treating source evidence (*id.* at 18-21), that the ALJ failed to make a proper credibility determination (*id.* at 21-24), and that the ALJ violated Social Security Ruling 00-4p by failing to inquire whether the VE's testimony was consistent with the DOT. (*Id.* at 24-26.)

### a.    Treating Source Opinions

Plaintiff contends that the ALJ failed to give proper weight to her treating physicians, Drs. Pirzada and Epstein, and improperly relied on the opinions of Dr. Best and Tracey Pfromm, even though the ALJ acknowledged that she is not a medical source. (*Id.* at 19-20.)

The opinion of Dr. Pirzada is simply a one-page form dated January 21, 2008, wherein Dr. Pirzada lists Plaintiff's diagnoses and estimates that medical treatment will be needed for a lifetime. (Tr. at 189.) Dr. Pirzada also notes that Plaintiff cannot drive after she receives shots in her neck, but otherwise does not need special transportation, that she has no medical need for assistance for any personal care activities, and he concludes that Plaintiff cannot work at her usual occupation (landscaping) for her lifetime and that she cannot work at any job for one year. (*Id.*)

The opinion of Dr. Epstein is a two-page form with items circled or checked regarding Plaintiff's physical capacity to work. (Tr. at 259-60.) On August 17, 2009, Dr. Epstein concluded that Plaintiff could only lift 0-10 pounds, sit for 1 hour, stand for 2 hours and walk for 1 hour in an 8-hour day, and that she could not perform these functions without having to take an unreasonable number and length of rest periods. (Tr. at 259.) Dr. Epstein opined that Plaintiff could never perform climbing, pushing/pulling or reaching and she could occasionally perform

15

balancing, stooping, crouching, kneeling, bending, crawling, handling, and feeling. (Tr. at 259.) Dr. Epstein also concluded Plaintiff was unable to work and past occupation or any full time occupation. (*Id.*)

I note at the outset that Dr. Epstein's and Dr. Pirzada's opinions that Plaintiff is unable to work are conclusions that are not entitled to controlling weight since "[i]t is well settled that the ultimate issue of disability is reserved to the Commissioner." *Kidd v. Comm'r*, 283 Fed. App'x 336, 341 (6th Cir. 2008); *Gaskin v. Comm'r*, 280 Fed. App'x 472, 475-76 (6th Cir. 2008).

The next question is whether the ALJ's decision to give Dr. Pirzada's or Dr. Epstein's opinions less than controlling weight was made in accordance with the required findings and is supported by substantial evidence.

In weighing the opinions and medical evidence, the ALJ must consider relevant factors such as the length, nature and extent of the treating relationship, the frequency of examination, the medical specialty of the treating physician, the opinion's evidentiary support, and its consistency with the record as a whole. 20 C.F.R. § 404.1527(d)(2)-(6). Therefore, a medical opinion of an examining source is entitled to more weight than a non-examining source and a treating physician's opinion is entitled to more weight than a consultative physician who only examined the claimant one time. 20 C.F.R. § 404.1527(d)(1)-(2). *See also Rogers*, 486 F.3d at 242 (stating that the "treating physician rule," which provides that "greater deference is usually given to the opinions of treating physicians than to those of non-treating physicians," is a key governing standard in social security cases). "Moreover, when the physician is a specialist with respect to the medical condition at issue, . . . her opinion is given more weight than that of a non-specialist." *Johnson v. Comm'r of Soc. Sec.*, 652 F.3d 646, 651 (6th Cir. 2011).

16

The opinion of a treating physician should be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "not inconsistent with the other substantial evidence in [the] case record." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); 20 C.F.R. § 404.1527(d)(2). If the ALJ declines to give controlling weight to a treating source's opinion, then he must use the following factors to determine what weight the opinion should be given: "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and specialization of the treating source." *Wilson*, 378 F.3d at 544.

When an ALJ "fail[s] to conduct the balancing of factors to determine what weight should be accorded these treating source opinions . . . , [t]his alone constitutes error, as '[a] finding that a treating source medical opinion . . . is not entitled to controlling weight [does] not [mean] that the opinion should be rejected.'" *Cole v. Comm'r of Soc. Sec.,* 652 F.3d 653, 660 (6th Cir. 2011) (quoting *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 408 (6th Cir. 2009)). This rule applies when the treating source opinion is a *medical* opinion; however, "[w]hen a treating physician instead submits an opinion on an issue reserved to the Commissioner – such as whether the claimant is 'disabled' or 'unable to work'– the opinion is not entitled to any particular weight." *Turner v. Comm'r of Soc. Sec.*, 381 Fed. App'x 488, 492-93 (6th Cir. 2011) (citing 20 C.F.R. §§ 404.1527(d), 416.927(d), 1527(e), 416.927(e); Soc. Sec. Ruling 96-5p; *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007)).

A physician qualifies as a treating source if the claimant sees the physician "with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition." 20 C.F.R. § 404.1502. "The opinion of a non-examining

17

physician, on the other hand, 'is entitled to little weight if it is contrary to the opinion of the claimant's treating physician.'" *Adams v. Massanari*, 55 Fed App'x 279, 284 (6th Cir. 2003) (quoting *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987)).

"Claimants are entitled to receive good reasons for the weight accorded their treating sources independent of their substantive right to receive disability benefits." *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007). Therefore, a decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's opinion and the reasons for that weight." S.S.R. 96-2p, 1996 WL 374188, at *5 (1996). *See also Rogers*, 486 F.3d at 242. "This requirement is not simply a formality; it is to safeguard the claimant's procedural rights." *Cole*, 2011 WL 2745792, at *4. "[A] failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight accorded the opinions denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Rogers*, 486 F.3d at 243.

In the instant case, Dr. Pirzada's opinion included a finding that Plaintiff does not need special transportation or assistance for any personal care activities, which is consistent with the ALJ's findings. (Tr. at 189.) In addition, Dr. Pirzada's conclusion that Plaintiff cannot work as a landscaper is not inconsistent with the ALJ's finding that she could perform the past relevant work as a housekeeper or jobs in the light work range. (Tr. at 22, 189.) I therefore suggest that the ALJ's conclusions do not conflict with Dr. Pirzada's underlying findings. The only portion of Dr. Pirzada's opinion that may conflict with the ALJ's findings is Dr. Pirzada's conclusion that Plaintiff could not work at any job for one year. (Tr. at 189.) As indicated earlier, this disability

finding is one reserved to the Commissioner. *Kidd, supra*. I therefore suggest that any deviation from Dr. Pirzada's opinion was supported by substantial evidence.

As to Dr. Epstein's opinion, I suggest that checkmarks on a form with no supporting clinical findings or medical evidence is not a medical opinion. Thus, it is "not entitled to any particular weight." *Turner,* 381 Fed. App'x at 492-93. Even if it were, I suggest that it is so inconsistent with the medical evidence of record, as noted by the ALJ, that the ALJ was justified in declining to give it controlling weight. (Tr. at 21-22.) Although Plaintiff was diagnosed with severe impairments in July 2009, Plaintiff reported to Dr. Khan that she had a "better quality of life with medicine" and that she was "more functional." (Tr. at 304-05.) Consistent with Plaintiff's statements, Dr. Kahn found upon examination that Plaintiff's gait was normal, range of motion for the cervical and lumbar spine was normal, upper extremity strength was 5/5 bilaterally, 5/5 bilaterally for the lower extremities and that her straight leg raising is positive bilaterally at 60 degrees. (Tr. at 305-06.) In addition, Dr. Underwood noted that Plaintiff's "symptoms have not changed that dramatically over the years" and her "MRIs of the cervical and lumbar spine showed no significant new changes when compared to the old MRIs," so even as recently as August 2009, Dr. Underwood recommended modest treatment, i.e., physical therapy. (Tr. at 212, 386.)

Furthermore, the ALJs findings are consistent with the opinions of Drs. Kahn and Underwood, who are also treating physicians. There is no showing that Dr. Epstein is any more a specialist than Drs. Kahn and Underwood such that his opinion would be entitled to more weight. "Deciding what weight to give competing evidence" at the same analytical level, "such as contradicting multiple treating physicians, is an administrative finding for which the final authority rests with the Commissioner." *Bandy v. Astrue*, No. 2:10-cv-00119, 2011 WL 6141037, at *6

(M.D. Tenn. Dec. 9, 2011). I therefore suggest that the ALJ's decision regarding what weight to give the treating source opinions is supported by substantial evidence.

### b.   Credibility Determination

Plaintiff contends that the ALJ failed to make a proper credibility determination. (Doc. 29 at 21-24.) When a disability determination that would be fully favorable to a claimant cannot be made solely on the basis of the objective medical evidence, an ALJ must analyze the credibility of the claimant, considering the claimant's statements about pain or other symptoms with the rest of the relevant evidence in the record and factors outlined in Social Security Ruling 96-7p. Credibility determinations regarding a claimant's subjective complaints rest with the ALJ. *See Siterlet v. Sec'y of Health and Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987). Generally, an ALJ's credibility assessment can be disturbed only for a "compelling reason." *Sims v. Comm'r of Soc. Sec.*, No. 09-5773, 2011 WL 180789 at *4 (6th Cir. Jan. 19, 2011) (citing *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001)); *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004). When weighing credibility, an ALJ may give less weight to the testimony of interested witnesses. *Cummins v. Schweiker*, 670 F.2d 81, 84 (7th Cir. 1982) ("a trier of fact is not required to ignore incentives in resolving issues of credibility"); *Krupa v. Comm'r of Soc. Sec.*, No. 98-3070, 1999 WL 98645 at *3 (6th Cir. Feb. 11, 1999) (unpublished). However, "[i]f an ALJ rejects a claimant's testimony as incredible, he must clearly state his reasons for doing so." *Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994).

The social security regulations establish a two-step process for evaluating subjective symptoms, including pain. 20 C.F.R. § 404.1529; SSR 96-7p. In order for pain or other subjective complaints to be considered disabling, there must be (1) objective medical evidence of an underlying medical condition, and (2) objective medical evidence that confirms the severity of the

20

alleged disabling pain arising from that condition, or objectively, the medical condition is of such severity that it can reasonably be expected to produce such disabling pain. *See id.*; *Stanley v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 117 (6th Cir. 1994); *Felisky*, 35 F.3d at 1038-39; *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986).

Therefore, the ALJ must first consider whether an underlying medically determinable physical or mental impairment exists that could reasonably be expected to produce the individual's pain or other symptoms. Secondly, after an underlying physical or mental impairment is found to exist that could reasonably be expected to produce the claimant's pain or symptoms, the ALJ then determines the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which the symptoms limit the claimant's ability to do basic work activities. *Id.* Although a claimant's description of his physical or mental impairments alone is "not enough to establish the existence of a physical or mental impairment," C.F.R. §§ 404.1528(a), 416.929(a), "[a]n individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded *solely* because they are not substantiated by objective medical evidence," S.S.R. 96-7p, at *1 (emphasis added). Instead, the ALJ must consider the following factors:

(i)   [D]aily activities;

(ii)   The location, duration, frequency, and intensity of . . . pain;

(iii)   Precipitating and aggravating factors;

(iv)   The type, dosage, effectiveness, and side effects of any medication . . . taken to alleviate . . . pain or other symptoms;

(v)   Treatment, other than medication, . . . received for relief of . . . pain;

(vi)   Any measures . . . used to relieve . . . pain.

*Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994); S.S.R. 96-7p, at *3. Furthermore, the consistency of the evidence, including a claimant's subjective statements, is relevant in determining a claimant's credibility. 20 C.F.R. § 404.1527(c); S.S.R. 96-7p, at *5.

After examining the record evidence, I suggest that substantial evidence supports the ALJ's credibility finding. The ALJ considered the appropriate factors and found that Plaintiff's complaints of disabling pain were not fully credible. (Tr. at 17-22.) I suggest that the ALJ's findings are supported by substantial evidence.

As noted earlier, no physician recommended surgery, and Plaintiff's treatment consisted of prescription drugs and physical therapy. I suggest that such modest treatment is inconsistent with a finding of total disability. *See Myatt v. Comm'r of Soc. Sec.*, 251 Fed. App'x 332, 334-35 (6th Cir. 2007). As also noted earlier, despite her impairments, Plaintiff maintained meaningful functional capacity. As of July 2009, Plaintiff reported to Dr. Khan that she had a "better quality of life with medicine" and that she was "more functional." (Tr. at 304-05.) Consistent with Plaintiff's statements,  Dr. Kahn found upon examination that Plaintiff's gait was normal, range of motion for the cervical and lumbar spine was normal, upper extremity strength was 5/5 bilaterally, 5/5 bilaterally for the lower extremities and that her straight leg raising was positive bilaterally at 60 degrees. (Tr. at 305-06.) In addition, Dr. Underwood noted that Plaintiff's "symptoms have not changed that dramatically over the years" and that her "MRIs of the cervical and lumbar spine showed "no significant new changes when compared to the old MRIs." (Tr. at 212, 386.) Furthermore, the RFC assessment also found that Plaintiff was "not fully credible" because "[m]edical information show no LE pain. Gait is normal. Normal shoulder." (Tr. at 223.)

Finally, Plaintiff's own testimony established that she is able to perform functions that are inconsistent with total disability, i.e., that she helps her nine year-old son get ready for school,

cooks, picks up around the house a little, takes her medications without reminders, takes care of her dog, has no problem with personal care, can prepare meals involving "several courses" on a "daily" basis, tries to "get out every day to get fresh air[,]" is able to manage her finances, watches television, is able to ride in and drive a car, is able to socialize on the phone and in person, is able to attend her son's ball games, and is able to shop in stores once a week for about 35-40 minutes. (Tr. at 166-70.) *See Griffeth v. Comm'r of Soc. Sec.*, 217 Fed. App'x 425, 429 (6th Cir. 2007); *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). In addition, when asked whether she could perform the job described by the ALJ on a full-time basis, Plaintiff responded, "possibly." (Tr. at 64-65.)

I therefore suggest that the ALJ's credibility finding is supported by substantial evidence.

### c.   Dictionary of Occupational Titles

Plaintiff contends that the ALJ violated SSR 00-4p by failing to inquire whether the VE's testimony was consistent with the DOT and that there are conflicts between the jobs as described by the VE and the DOT. (Doc. 29 at 24-26.)

In this Circuit, Social Security Ruling 00-4p is satisfied by the ALJ simply asking the VE if her testimony is consistent with the DOT. *Martin v. Comm'r of Soc. Sec.*, 170 Fed. App'x 369, 375-76 (6th Cir. 2006). Although Plaintiff alleges the ALJ did not, the ALJ did ask the VE whether his testimony was consistent with the DOT and further asked him to point out if there were any differences between his testimony and the information in the DOT. (Tr. at 73.) Therefore, I suggest that the ALJ was not under any obligation to inquire further into the accuracy of the VE's testimony, especially in light of the fact that Plaintiff's counsel failed to assert at the hearing that any conflict existed. *See Ledford v. Astrue*, 311 Fed. App'x 746, 757 (6th Cir. 2008) ("Nothing in the applicable Social Security regulations requires an administrative law judge to conduct his

or her own investigation into the testimony of a vocational expert to determine its accuracy, especially when the claimant fails to bring any conflict to the attention of the administrative law judge").

I further suggest that even assuming, *arguendo*, that the ALJ had an obligation to inquire further into the classification of the information clerk, hand mounter and gauger challenged by Plaintiff, the VE's testimony regarding the hand packager and inspector sorter jobs remains unchallenged and would, by itself, provide substantial evidence for the ALJ's conclusion that Plaintiff was not disabled. *See Martin v. Comm'r of Soc. Sec.*, 170 Fed. App'x 369, 374 (6th Cir. 2006) (noting that the ALJ had no affirmative duty to investigate whether VE was correct where the plaintiff did not bring any conflict to his attention and finding substantial evidence satisfied where, "even if the two positions about which there were inconsistencies had been excluded, the ALJ still could have found that [the plaintiff] could perform the third position").

Finally, I suggest that the hypothetical posed to the VE properly incorporated the limitations found in the RFC assessment and was in harmony with the objective record medical evidence and Plaintiff's own statements as indicated above. *See Griffeth v. Comm'r of Soc. Sec.*, 217 Fed. App'x 425, 429 (6th Cir. 2007); *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).

### 3.   Conclusion

For all these reasons, after review of the record, I conclude that the decision of the ALJ, which ultimately became the final decision of the Commissioner, is within that "zone of choice within which decisionmakers may go either way without interference from the courts," *Felisky*, 35 F.3d at 1035, as the decision is supported by substantial evidence.

## III.   REVIEW

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005).  The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation.  *McClanahan*, 474 F.3d at 837; *Frontier Ins. Co.,* 454 F.3d at 596-97.  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be concise, but commensurate in detail with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.


                                        s/ 𝕮𝖍𝖆𝖗𝖑𝖊𝖘 𝕰 𝕭𝖎𝖓𝖉𝖊𝖗
                                        CHARLES E. BINDER
Dated: February 13, 2012                United States Magistrate Judge


### CERTIFICATION

I hereby certify that this Report and Recommendation was electronically filed this date and served upon counsel of record via the Court's ECF System.

Date:  February 13, 2012                 By       s/Patricia T. Morris
                                         Law Clerk to Magistrate Judge Binder

25