UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHERYL A. BAKER,

    Plaintiff,        Case No. 10-13748

                  Paul D. Borman
                  United States District Judge
v.

                  Charles E. Binder
                  United States Magistrate Judge
COMMISSIONER OF
SOCIAL SECURITY,

    Defendant.
_____/

OPINION AND ORDER
(1) ADOPTING THE MAGISTRATE JUDGE'S FEBRUARY 13, 2012 REPORT AND
RECOMMENDATION (DKT. NO. 34),
(2) DENYING PLAINTIFF'S OBJECTIONS TO THE
REPORT AND RECOMMENDATION (DKT. NO. 35),
(3) DENYING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT OR REMAND (DKT. NO. 29), AND
(4) GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DKT. NO. 31)

    This matter is before the Court on Plaintiff's Objections (Dkt. No. 35, "Pl.'s Objs.") to Magistrate Judge Charles E. Binder's February 13, 2012 Report and Recommendation (Dkt. No. 34 "R&R"). Defendant filed a response to the Plaintiff's Objections. (Dkt. No. 36.) Having conducted a *de novo* review of the entire record, and for the reasons that follow, the Court DENIES Plaintiff's Objections, ADOPTS the Report and Recommendation, DENIES Plaintiff's Motion for Summary Judgment or Remand and GRANTS Defendant's Motion for Summary Judgment.

**I. BACKGROUND**

    The Magistrate Judge adequately recounted the relevant facts and procedural history. His

1

summary of the record and the ALJ's findings are incorporated herein. (Dkt. No. 34, R&R at 7-13.)

## II. STANDARD OF REVIEW

A district court must conduct a *de novo* review of the parts of a magistrate judge's report and recommendation to which a party objects. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). A district "court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." *Id.* A general objection, or one that merely restates the arguments previously presented, does not sufficiently identify alleged errors on the part of the magistrate judge. An "objection" that does nothing more than disagree with a magistrate judge's conclusion, or simply summarizes what has been argued before, is not considered a valid objection. *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505, 508 (6th Cir.1991); *Lyons v. Comm'r of Soc. Sec.*, 351 F. Supp. 2d 659, 661 (E.D. Mich. 2004).

In reviewing the findings of an Administrative Law Judge in a social security appeal, the Court is limited to determining whether those findings are supported by substantial evidence. *See* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . ."). Substantial evidence includes any relevant evidence that "a reasonable mind might accept as adequate to support a conclusion." *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007) (quoting *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001)). "If the Commissioner's decision is supported by substantial evidence, we must defer to that decision, 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Id.* (quoting *Longworth v. Comm'r of Soc. Sec. Admin.*, 402 F.3d 591, 595 (6th Cir. 2005)). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th

Cir. 2007).

III. ANALYSIS

    A.     The ALJ's Decision to Give Little Weight to the Opinions of Drs. Prizada and Epstein was Adequately Explained and Was Supported by Substantial Evidence

Plaintiff first objects that the Magistrate Judge erred in affirming ALJ Reynolds's decision to give little controlling weight to the opinions of Drs. Prizada and Epstein. (Pl.'s Objs. 1-5.) The Court agrees with the Magistrate Judge that to the extent that the ALJ deviated from Drs. Pirzada's and Epstein's opinions, such a decision was supported by substantial evidence and that ALJ Reynolds met his obligation to explain why he did not give Drs. Prizada's and Epstein's opinions controlling weight. Dr. Prizada's opinion, reflected in a one-page form, that Plaintiff could not return to her past work as a landscaper is not inconsistent with the conclusion reached by the ALJ that Plaintiff could return to her past work as a housekeeper or, alternatively, to light work of a different type. (Tr. 189.) The only aspect of Dr. Prizada's opinion that the ALJ discounted was the conclusion that Plaintiff was "unable to work for one year." As both the ALJ and the Magistrate Judge correctly noted, this is a conclusion reserved to the Commissioner. "[W]hen a treating physician offers an opinion on an issue reserved to the Commissioner, such as whether the claimant is disabled, the ALJ need not accord that opinion controlling weight." *Kidd v. Comm'r of Soc. Sec.*, 283 F. App'x 336, 340-41 (6th Cir. 2008) (citing *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007)). As the Sixth Circuit observed in *Kidd*, quoting with approval the words of the ALJ in that case, "whether the claimant is 'disabled' or able to work is an administrative decision requiring the consideration of medical findings and vocational factors in the context of legal standards and reserved to the Commissioner." *Id.* at 341. Morever, as the ALJ had done in *Kidd*, ALJ Reynolds

3

in the instant case gave additional supporting reasons for rejecting Dr. Prizada's opinion that Plaintiff was completely unable to work for one year; Dr. Prizada failed to support his opinion by identifying specific clinical findings or objective medical evidence. (Tr. 21.) Indeed, Dr. Prizada's one-page opinion does not refer to any clinical findings or any diagnostic tests. The Court agrees with the Magistrate Judge that substantial evidence supported the ALJ's decision to give little weight to Dr. Prizada's opinion.

Dr. Epstein's two-page form opinion likewise fails to specify any objective findings to support his opinion. (Tr. 259-60.) Dr. Epstein does list the various conditions from which Plaintiff suffers, but when asked specifically to indicate "all clinical and objective findings which document [Plaintiff's] symptoms/conditions," Dr. Epstein provides nothing other than the sweeping conclusion that Plaintiff has "chronic pain in her neck and back that prevents her from lifting and pushing/pulling or standing/sitting for great amounts of time." (Tr. 260.) The Court agrees with the Magistrate Judge that, when viewed in light of the extensive treating notes of Drs. Khan and Underwood, Dr. Epstein's formulaic conclusion is so at odds with that medical evidence that it is entitled to little weight. As the Magistrate Judge correctly notes, Dr. Underwood, Plaintiff's treating neurologist, as late as August, 2009, noted that Plaintiff's August, 2009 MRI showed no new significant changes from her March, 2008 MRI. Dr. Underwood continued to recommend conservative treatment of Plaintiff's condition, injections and therapy, and not surgery. No treating or examining physician ever noted any nerve root compression or nerve-related symptoms. (Tr. 212, 386.) At the hearing before ALJ Reynolds, Plaintiff denied ever experiencing tingling or pain radiating down her legs. (Tr. 48-49.) While Dr. Underwood noted in April, 2008, that surgery may be of benefit to Plaintiff at some future time, in fact he never recommended surgery and instead in

4

August, 2009, continued to recommend conservative, non-surgical treatment.

In July, 2009, Plaintiff reported to Dr. Khan that she had an improved quality of life with her medications, that she was "more functional" and was taking her medications as prescribed. (Tr. 304-05.) Plaintiff also denied that her medications caused nausea, vomiting, constipation, dyspepsia or cognitive impairment. (Tr. 305.) Although admittedly at this exam in July, 2009, Plaintiff was symptomatic in some respects due to her underlying impairments, Dr. Khan also noted that Plaintiff had normal range of motion in her cervical and lumbar spine, normal gait and full strength in her upper and lower extremities. (Tr. 304-305.) *See Kidd*, 283 F. App'x at 342 (finding that the ALJ's decision to reject the opinion of plaintiff's treating physician was supported by substantial evidence where plaintiff indicated improvement of her quality of life with medication, had no showing of nerve root compression, demonstrated normal strength and was prescribed only conservative, non-surgical treatment).

Drs. Prizada and Epstein were not specialists, did not have a longstanding treating relationship with the claimant, issued perfunctory reports that failed to refer to diagnostic findings and the ALJ found their opinions to be inconsistent with the underlying medical evidence and the opinions of Drs. Khan and Underwood, who were also treating physicians. The ALJ properly considered all of the relevant factors in reaching his decision to place little weight on the opinions of Drs. Prizada and Epstein. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (citing 20 C.F.R. § 404.1527(c)(2)). The Court concludes, as the Magistrate Judge correctly found, that the ALJ's decision to place little weight on the opinions of Drs. Prizada and Epstein was thoroughly explained in his ruling and was supported by substantial evidence.

### B. The Court Finds No Compelling Reason to Disturb the ALJ's Credibility Assessment of the Plaintiff

"[T]he ALJ's credibility assessment [can] be disturbed only for a compelling reason." *Sims v. Comm'r of Soc. Sec.*, 406 F. App'x 977, 981 (6th Cir. 2011) (citing *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 392 (6th Cir. 2004)). However, "[i]f an ALJ rejects a claimant's testimony as incredible, he must clearly state his reasons for doing so." *Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994). "A claimant's testimony may be discounted if it is contradicted by the medical reports and other evidence." *Sims*, 406 F. App'x at 981.

The ALJ concluded that Plaintiff's medically determinable impairments could reasonably be expected to produce Plaintiff's alleged symptoms but found that Plaintiff's statements regarding the intensity and limiting effects of her symptoms were not fully credible to the extent that they were contradicted by the record evidence. The Court finds no compelling reason to disregard the ALJ's assessment of Plaintiff's credibility and agrees with the Magistrate Judge that the ALJ's credibility determination is supported by substantial evidence. Plaintiff testified at the hearing that she "possibly" could perform the tasks of light work described by her attorney but that she might not be able to do it "full time" because of "all" of the doctor's appointments she had to attend. (Tr. 64.) Yet later in her testimony she revealed that "all" was actually "once or twice a week," not a seemingly sufficient number of appointments to fully disable Plaintiff from full time work. (Tr. 68.) Plaintiff's testimony at the hearing directly conflicted with the record medical evidence in several other respects. For example, Plaintiff testified at the hearing that the medications made her dizzy and drowsy, yet one month earlier Dr. Khan noted that Plaintiff admitted to no cognitive impairment as a result of her medications. Plaintiff testified at the hearing that she never experienced pain or

numbness in her legs, yet one month earlier Dr. Khan noted that Plaintiff complained of pain down to her feet. (Tr. 304.)

Moreover, the record demonstrates that Plaintiff's findings on MRI and symptoms have been longstanding ("at least 10 years" by Plaintiff's own description) and were not worsening as determined by Dr. Underwoood. (Tr. 212, 386.) Despite her treating physician's finding that Plaintiff's March, 2008 and August, 2009 MRI's were not substantially different, Plaintiff's description of the limitations on her functional abilities were much more severe at the September, 2009, hearing than she described them in her March, 2008 Adult Function Report. In that earlier report, Plaintiff admitted to caring for her son, feeding and letting her dogs in and out, having no problem with any item of personal care, preparing "several course" meals daily, doing cleaning and laundry without help, getting out for fresh air daily, driving a car alone, shopping in stores once a week for about 35-40 minutes, and regularly attending sports games with her son. (Tr. 166-173.) By contrast, at the hearing in September, 2009, Plaintiff testified that her pain was so chronic and severe that she was unable to concentrate, that she had to have her son do the laundry and make his own breakfast, that she had her boyfriend make the coffee in the morning, that she rarely did the dishes, cooked only simple meals, that her house was "demolished" because she did so little housework but that once or twice a week she was able to attend various doctor's appointments. (Tr. 66-69.)

The Court concludes, as the Magistrate Judge correctly found, that the ALJ's credibility determination, to which the reviewing court must give great deference, was supported by substantial evidence.

7

### C. The ALJ Was Under No Obligation to Inquire of the Vocational Expert Regarding Inconsistencies With the DOT *Only After* the VE's Testimony and Plaintiff Failed to Identify any Alleged Inconsistency Prior to the ALJ's Ruling

Plaintiff provides no Sixth Circuit authority in support of her proposition that the ALJ must question the Vocational Expert as to the consistency of his or her testimony with the DOT only *after* the VE has testified. Indeed, Plaintiff relies solely on a 2007 Northern District of Indiana case and fails to acknowledge the subsequent Seventh Circuit opinion in *Weatherbee v. Astrue*, 649 F.3d 565, 570 (7th Cir. 2011) in which the court expressly addressed this issue and held that the ALJ did not err by inquiring whether the VE's testimony would conflict the DOT *before* her substantive testimony:

> We reject Weatherbee's claim that Ruling 00–4p requires ALJs to inquire about conflicts between a VE's testimony and the DOT after the VE provides her substantive testimony. The text of the Ruling only requires ALJs to inquire about conflicts "before *relying* " on a VE's testimony, but does not specify whether this inquiry should (or must) occur before or after a VE testifies. See Social Security Ruling 00–4p ("[T]he adjudicator must elicit a reasonable explanation for the conflict *before relying* on the VE ... evidence."). As several district courts have noted, we have not read a temporal requirement into the Ruling 00–4p and have refused to establish a singular method by which ALJs must elicit potential conflicts.

649 F.3d at 570 (citations omitted) (emphasis in original).

In the instant case, the ALJ specifically required the VE to point out, as he testified, any inconsistency between his testimony and the DOT characteristics of occupations. (Tr. 73.) The VE expressly agreed to do so and there is no evidence that the VE failed to abide by his sworn agreement. "The VE agreed under oath to identify and resolve any conflict between her testimony and the DOT. Nothing in the hearing's transcript suggests that the VE disregarded the ALJ's instructions." *Weatherbee*, 649 F.3d at 570. The Court agrees with the Magistrate Judge that the ALJ's opening inquiry to the VE satisfied the requirement of Ruling 00-4p in this case.

Finally, contrary to her contention that she properly raised issues regarding inconsistencies between the VE's testimony and the DOT, she first did so in her summary judgment brief. Plaintiff did not raise these alleged inconsistencies at the hearing. In fact when asked by the ALJ if she had any questions for the VE, Plaintiff's counsel expressly stated that she had no questions for the VE: "Your Honor, I don't have any questions for the VE." (Tr. 76.) Plaintiff's failure to raise any alleged inconsistencies at the hearing deprived the ALJ of the opportunity to raise them with the VE. The ALJ is under no independent obligation to verify the accuracy of the VE's testimony beyond what is required under Ruling 00-4p, which the ALJ did here. Nor is the ALJ bound by the DOT in making his final disability determination:

> Even if there were an inconsistency, the plaintiff has not pointed to any authority that the ALJ erred in his findings based on the VE's testimony, which went unchallenged by the plaintiff until after the ALJ issued his decision. As an initial matter, neither the ALJ nor the VE is required to follow the DOT. *Wright v. Massanari*, 321 F.3d 611, 616 (6th Cir. 2003) (holding that "the ALJ and consulting vocational experts are not bound by the Dictionary in making disability determinations because the Social Security regulations do not obligate them to rely on the Dictionary's classifications"). The ALJ fully complied with SSR 00-4p when he asked the VE whether there was "any discrepancy between [her] opinions and the DOT standards for the requirements of the jobs [she] named." *See Lindsley*, 560 F.3d at 606 (holding that the ALJ fulfilled his duties when he asked the VE whether there was any "discrepancy between your opinions and the DOT standards," even if the VE did not disclose a conflict). As *Lindsley* makes clear, the ALJ is under no obligation to investigate the accuracy of the VE's testimony beyond the inquiry mandated by SSR 00-4p. *Id.* This obligation falls to the plaintiff's counsel, who had the opportunity to cross-examine the VE and bring out any conflicts with the DOT. The fact that plaintiff's counsel did not do so is not grounds for relief. *See Ledford v. Astrue*, 311 Fed.Appx. 746, 757 (6th Cir.2008).

*Beinlich v. Comm'r of Soc. Sec.*, 345 F. App'x 163, 169-69 (6th Cir. 2009). Plaintiff's attorney expressly declined to cross examine the VE at the hearing and cannot now complain that the ALJ failed to address these alleged inconsistencies.

9

## IV. CONCLUSION

For the foregoing reasons, the Court DENIES Plaintiff's Objections to the Magistrate Judge's Report and Recommendation (Dkt. No. 35), ADOPTS the Report and Recommendation (Dkt. No. 34), GRANTS Defendant's Motion for Summary Judgment (Dkt. No. 31) and DENIES Plaintiff's Motion for Summary Judgment or Remand (Dkt. No. 29).

IT IS SO ORDERED.

PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated: 6-18-12